DORR *against* SHAW.

If one judgment creditor has a right to go upon two funds, and a second judgment creditor upon one of them, belonging to the same debtor, the former may be compelled to apply first to the fund not reached by the second judgment, so that both judgments may be satisfied.

But if the first creditor has a judgment against *A.* and *B.*, and the second against *B.* only, the latter cannot compel the former to take the land of *A.* only; it not appearing whether *A.* or *B.* ought to pay the debt due the first creditor; nor any equitable right shown in *B.* to have the debt charged on *A.* alone.

THE bill stated, that in *April*, 1813, *David Stafford* was seised of seventy-two acres of land, and his son *P. S.* of thirty acres of land adjoining. In *April*, 1813, they executed a judgment bond to the defendant, for the payment of 437 dollars, with interest. On this bond, judgment was soon after entered up in the Court of C. P. of *Washington* county. On the 1st of *October*, 1813, *D. S.* executed a judgment bond to *Worthey Waters*, for 1,600 dollars, on which a judgment was on the same day entered up. In *May*, 1817, the seventy-two acres of land of which *D. S.* was seised, were sold under an execution issued on this judgment. Previous to this sale, *W. W.* assigned the judgment to the plaintiff, to whom he was indebted in the sum of 2,000 dollars. The plaintiff purchased the seventy-two acres of land at the sheriff's sale, and took possession thereof, and still remains in possession. The sheriff's deed was dated the 22d of *July*, 1818. The defendant had caused an execution to be issued on the judgment first above mentioned, and the sheriff had advertised for sale the lands of *D. S.* and *P. S.*, in lot 20, of *Cambridge Patent*, except thirty acres sold by *P. S.* to *Reuben Park.* This lot, No. 20, contained

*January 25th.*

the seventy-two acres, and the thirty acres, above mentioned. The bill further stated, that the thirty acres were worth more than the judgment debt in favour of the defendant; that the plaintiff was willing, and had offered to pay the judgment to the defendant, if it had not been already paid, on condition that he would assign the judgment to the plaintiff, which he had refused to do. The plaintiff prayed that the defendant might be decreed to cease all proceedings on his judgment and execution, or be compelled to assign the same to the plaintiff, on being paid the debt, interest, and costs.

The *answer* of the defendant admitted the judgments, &c. as stated in the bill; that *D. S.* had made him three several payments, amounting in the whole to 245 dollars, which was all that had been received, and that the residue still remained due on the judgment. That when the judgment was entered up, *D. S.* was seised of seventy-two acres, and *P. S.* of thirty acres adjoining, in lot No. 20. That on the 25th of *October*, 1814, *Reuben Park*, who had purchased the seventy-two acres, and the thirty acres, mortgaged the same to *D. S.* to secure the payment of 1,000 dollars, part of the purchase money; and on the 5th of *June*, 1815, *D. S.* assigned the bond and mortgage of *Park* to the defendant, for 818 dollars. That on the 27th of *January*, 1817, *P. S.*, in consideration of 500 dollars, conveyed the thirty acres to the defendant. That on the 18th of *September*, 1817, the defendant caused an execution to be issued on the judgment first above mentioned, and on which the seventy-two acres were advertised for sale, and the plaintiff became the purchaser, as stated in the bill. That before the bid, the plaintiff "had notice that the judgment in favour of *W. W.* was without consideration, and fraudulent; that the defendant had an older judgment, on which above 500 dollars was due, and that the thirty acres were owned by the defendant." The defendant admitted the other facts

as charged in the bill, but alleged that the assignment of the judgment by *W. W.* was fraudulent.

The cause was submitted to the Court on the bill and answer; and it was agreed that the answer was to be taken as true, except as to the allegations of fraud as to the judgment in favour of *W. W.*, and its assignment.

*Shepherd*, for the plaintiff.

*Crary*, for the defendant.

THE CHANCELLOR. This case presents complicated relations; but it may be illustrated in an easy manner. The defendant holds a judgment against *A.* and *B.* binding upon seventy-two acres of land owned by *A.*, and thirty acres of land owned by *B.* It does not appear whether *A.* and *B.* were both principal debtors. They were father and son, and the pleadings are silent as to the origin of the judgment debt. The plaintiff is assignee of a younger judgment against *A.* only, and binding on the seventy-two acres. It does not appear when the plaintiff became such assignee. The bill only states, that he took an assignment of the judgment before a sale upon execution under it, and which sale is stated to have been in *May*, 1817. The instrument of assignment bears date in *October*, 1816, but the time of execution is not proved. The defendant purchased the thirty acres from a person who had purchased from *B.*, and his purchase is stated to have been in *January*, 1817; and it is further stated, that at the sale, the plaintiff was informed of that purchase by the defendant, and that the plaintiff, nevertheless, purchased in the seventy-two acres, upon the judgment and execution which he then owned.

It appears, then, that the defendant, as owner of the elder judgment, has purchased in the thirty acres on which his judgment originally attached, and the plaintiff, as owner of the junior judgment, has purchased in the seventy-two acres

bound by his judgment, towards satisfaction of his execution.

The defendant is now pursuing an execution, under his elder judgment, against the seventy-two acres, in order to satisfy the balance due thereon ; and the plaintiff seeks to prevent it, by requiring that the defendant should satisfy his execution out of the thirty acres, and which amounts to the same thing as to require the defendant to abandon his execution.

Is this one of the cases in which the court will compel the elder creditor to apply first to the thirty acres, or the fund not reached by the younger judgment ? I am of opinion that it is not.

If both judgments had been against *David Stafford* only, the rule that the prior creditor must be thrown first on the fund not reached by the second judgment, might have applied. But here we have no means of knowing whether *A.* or *B.* ought to pay the debt ; and it might be very unjust, as between those two original debtors, if the court should interfere, and charge the debt upon one of them, instead of the other. They are not before the court, and we have nothing in the case to guide us in making a selection between them. The consequence is, that we cannot interfere in the case.

The doctrine in a case of this kind was very clearly laid down by Lord *Eldon*, in *ex parte Kendal*. (17 *Ves.* 520.) " We have gone this length," says the Lord Chancellor, " if *A.* has a right to go upon two funds, and *B.* upon one, having both the same debtor, and the funds are the property of the same person, *A.* shall take payment from that fund to which he can resort exclusively, so that both may be paid. But it was never said, that if I have a demand against *A.* and *B.*, that a creditor of *B.* shall compel me to go against *A.*, without more. If I have a demand against both, the creditors of *B.* have no right to compel me to seek payment from *A.*, if not founded in some equity, *giving B. for his*

*own sake*, as if he was surety, &c., a right to compel me to seek payment of *A.* It must be established, that it is just and equitable that *A. ought to pay, in the first instance*, or there is no equity to compel a man to go against *A.*, who has resort to both funds."

Bill dismissed, without costs.