Philip Kassin, Plaintiff, v. M. & L. Building Corporation and Others, Defendants.

Fanny Brandfon, Appellant; Morris Schwartz, Respondent.

Second Department, February 19, 1926.

Mortgages — foreclosure — first mortgage foreclosed covered thirty-four lots — second mortgage held by respondent covered all lots except appellant's and also covered other property — appellant protested against sale of her lot on ground that amount received from thirty-three lots sold was sufficient — sale of appellant's lot was not necessary to satisfy first mortgage — appellant bid in her lot — appellant had right to move to direct referee to return balance, over and above taxes, expenses, etc.— rule of sale in inverse order of alienation applicable.

The appellant, who was the owner of one of thirty-four lots covered by a first mortgage, has the right to move to compel the referee to return to her the balance she paid to him on her bid for her lot, less taxes, expenses, etc., paid out by him, where it appears that the lots were sold separately and in the inverse order of alienation; that thirty-three lots were sold and produced a sufficient amount to cover the first mortgage and all moneys required to be paid out by the referee; that when the appellant's lot was offered for sale she protested against the sale of same on the ground that it was unnecessary, and that after her protest had been rejected, she bid in the lot herself and received a deed therefor from the referee.

The respondent, who holds a second mortgage on all the lots except appellant's, which mortgage also covers other property, was not entitled to have the sale made contrary to the ordinary rule that the sale must be in the inverse order of alienation, for the fund or property involved in this proceeding did not belong to the same person and the respondent had security other than the property upon which the first mortgage was a lien, the value of which was not shown to be insufficient to satisfy the respondent's mortgage.

*It seems*, also, if the respondent's mortgage covered only the premises involved in this foreclosure sale, he would not be equitably entitled to have appellant's lot sold contrary to the rule herein stated, for if her premises were sold, her loss would be complete and she could not resort to any one to pay her, while as to the respondent, the mortgage was only security for his loan, and after the sale of the premises, the indebtedness would remain and could be collected.

Lazansky, J., dissents.

Appeal by Fanny Brandfon from an order of the Supreme Court, made at the Kings Special Term and entered in the office

of the clerk of the county of Kings on the 11th day of September, 1925, and also from an order resetting said order, entered in said clerk's office on the 5th day of October, 1925, denying her motion for an order directing the referee herein to pay back or return to her the amount paid by her for certain premises owned by her and sold under the decree of foreclosure herein.

*Gerson C. Young* [*Allan D. Emil* with him on the brief], for the appellant.

*Harry Mabel*, for the respondent.

JAYCOX, J. In this action the plaintiff foreclosed a mortgage covering thirty-four lots, situated on Crown street in the borough of Brooklyn, city of New York. The respondent, Morris Schwartz, was the owner and holder of a mortgage, second and subordinate to that held by the plaintiff, upon thirty-three of the lots covered by the plaintiff's mortgage. The appellant, Fanny Brandfon, was the owner of the thirty-fourth lot, the lot not covered by the mortgage held by Schwartz. No answers were interposed by the defendants, and in due course an order of reference to compute the amount due was made. The referee reported and a judgment of foreclosure and sale was entered. Subsequently the defendant Schwartz made a motion to amend the judgment as to the amount due, and by stipulation the judgment was amended in that respect. The judgment was in the usual form and directed the sale of the premises described in the complaint, or so much thereof as may be sufficient to discharge the mortgage debt, the expenses of sale, etc. It also provided for putting up the premises for sale by different methods and directed the sale to be made by that method which produced the largest amount. At the sale it was found that the premises brought the largest amount by selling one lot at a time, and the premises were sold by that method. Thirty-three of the lots were sold, the remaining lot being the lot owned by the appellant Brandfon, when her attorney, who was present at the sale, discovered that the amount for which the other lots had been sold was sufficient to pay the mortgage debt, the expenses of the sale, etc., as required by the judgment of foreclosure and sale. He thereupon protested orally and in writing to the referee against the sale of the appellant's lot. The referee, however, not being certain that the amount realized was sufficient to cover all the items which he would be required to pay, insisted upon selling and did sell the appellant's lot. The appellant through her attorney thereupon purchased said lot for the sum of $10,650. Subsequently the referee ascertained, and it is undisputed, that the amount

realized from the sale, before the lot of the appellant was sold, was sufficient to pay the mortgage debt, the expenses of the sale, and all the other items required to be paid by him under the judgment herein. Thereafter on closing title to the lot owned and purchased by Mrs. Brandfon, her attorney protested against paying the balance of the purchase price and taking a deed, but the plaintiff's attorney insisted upon the terms of the sale being carried out. Thereupon, under protest, the balance was paid, the deed accepted and recorded. The report of sale, however, has not yet been filed. The defendant Fanny Brandfon then moved for an order directing the referee to repay to her the amount paid by her, $10,650, less $429.56 paid by the referee for taxes, arrears of taxes, assessments, water rates, accrued interest, penalties thereon and for stamps on the deed affecting said lot owned by said Fanny Brandfon. This motion was denied and it is from the order entered thereon that the defendant Fanny Brandfon appeals.

I can see no difficulty with the motion made by the appellant. It is contended that the motion cannot be granted and that her relief was to have the deed to her set aside. Before the sale the premises purchased by the appellant were owned by her. As a result of the sale the title is still vested in her. There seems to be no good reason why the proceedings, by which the title was not in any way changed, should be vacated or set aside. It would seem that the simplest way of correcting any injustice that has been done to her should be adopted. The report of the referee has not yet been made. Every one interested in the matter is before the court. The appellant will have complete relief if the money she claims is returned to her. It would, therefore, seem that the only question for the court to determine is whether she is entitled to the relief she asks for or not. It was held at Special Term that the appellant, having accepted the deed, could not question the validity of the sale upon the ground that more property than was needful to satisfy the plaintiff's claim had been sold, citing *McBride* v. *Lewisohn* (17 Hun, 524); *DeForest* v. *Farley* (62 N. Y. 628) and *Livingston* v. *Mildrum* (19 id. 440). None of these cases supports the position taken by the Special Term of this court. In *McBride* v. *Lewisohn* (*supra*) the facts were as follows: In a foreclosure sale of ten lots when nine lots had been sold, enough had been realized to pay the amount due with interest, costs and expenses of the sale and to create a surplus. The referee, however, proceeded to sell the tenth lot. After that the lot was several times sold and the action then before the court arose out of the refusal upon the part of another purchaser to accept the title, claiming it was defective because of the unnecessary sale of this

lot. It is stated in the opinion that " The owner of the equity of redemption does not appear to have made any objection to the sale of lot 778, although apparently in excess of the power conferred by the decree, and for aught that is shown in this controversy has never, since the sale, in any way claimed any right or title to it." Surplus money proceedings were had and the surplus, without objection from the owner, paid over to the second mortgagee. The premises being subject to a second mortgage, it was held that application could have been made at the foot of the decree for a direction to sell the premises for the benefit of the subsequent mortgagee and claimants. The owner of the equity of redemption was the only person who could object, and " by permitting the proceedings to go on in reference to the surplus occasioned by the sale, she has waived all right to any consideration on that subject and is estopped."

In *DeForest* v. *Farley* (*supra*) the judgment directed " that the entire mortgaged premises " be sold. The premises were sold in six parcels and the purchasers of two parcels moved to set aside the sale as to them upon the ground that prior to the sale to them sufficient of the mortgaged premises had been sold to satisfy the judgment. The owner of the equity of redemption appeared in the action and asked that the entire premises be sold. The court held " that as there were liens subsequent to the mortgage, the court had power to direct the sale of the entire premises, although unnecessary for the satisfaction of plaintiff's claim."

In *Livingston* v. *Mildrum* (*supra*) it is unnecessary to state the facts. A quotation from the syllabus will show that that case has no application to the situation involved in this action. " It is the duty of the court, upon the foreclosure of a mortgage, to provide for the sale of so much of the mortgaged premises, and in such manner that parties having equities subject to the primary lien shall not be prejudiced. This power may be exercised so long as the subject matter and the parties remain before the court, and under its jurisdiction, as well after a sale of sufficient to satisfy the primary lien as before. The inchoate rights of mechanics and materialmen, under the statutes giving them a lien, are entitled to such protection, although not established by judgment."

It is apparent that the cases cited have no application to the situation involved in this action. Those cases clearly indicate that, notwithstanding the judgment of foreclosure and sale and the sale thereunder, the court has power, by direction at the foot of the judgment, or otherwise, to see that justice is done between the parties. ·

The procedure of the appellant has not been such as to surrender

or waive any of her rights. When the question of the sale of her lot arose she promptly protested, claiming that the sale of her lot was unnecessary to raise the amount required by the judgment, and that as her premises had been aliened by the mortgagor they could only be sold for that purpose. Her bidding upon the sale was entirely consistent with her attitude. If she had permitted some one else to buy, her position would have been complicated by other rights and claims. By purchasing she confined the questions at issue to the parties interested in the action and whose rights, it must be presumed, had been fixed and determined by the judgment in the action; and the only questions involved, if she purchased the premises, would be as to the powers of the referee under the decree and in the situation here shown. She maintained her attitude at the time she accepted the deed and paid the balance of the purchase money. When her protest was not heeded she was wise to accept the deed, even if she was not compelled to do so by the situation. If she had refused to accept the deed and complete her purchase, it would have resulted either in a motion by her to vacate the sale of her lot, or a motion by the referee to compel her to accept the deed and complete the sale. Either of these motions would have resulted in delay. During this delay the interest upon the unpaid mortgage debt would have accumulated, and although the amount bid at the sale prior to the sale of the appellant's lot was sufficient to pay the mortgage debt and expenses, it would not have been so if there had been any material delay in closing the title. The appellant was, therefore, obliged to pay the balance of the purchase price and accept the deed, or see her claim for redress destroyed by circumstances over which she would have no control. It, therefore, seems apparent that the appellant's motion is authorized and that she is not in any way estopped from obtaining the relief she asks if she is legally entitled thereto.

This brings us to a consideration of the question as to whether the appellant's premises should have been sold under the decree and whether, having been sold, the defendant Schwartz has any equitable right to insist that the surplus herein should be increased by the amount paid by the appellant for her own premises. It is unquestioned now that the amount which had been realized upon the sale was sufficient to pay the amounts directed to be paid by the judgment before the appellant's lot was sold. The respondent Schwartz now claims that the right which the purchasers from the mortgagor of premises, subject to the mortgage, ordinarily have of having the mortgaged premises sold in the inverse order of alienation, did not apply here. That this is the ordinary rule

is established by many authorities, and is conceded by the respondent. The exception is claimed to result from the fact that the plaintiff herein had a lien by mortgage on the thirty-three lots first sold, and also upon the appellant's lot, while the Schwartz mortgage covered the thirty-three lots and did not cover the appellant's lot, and that, therefore, instead of the appellant's lot being sold last the respondent claims it should have been sold first. This contention, undoubtedly, influenced the court at Special Term in its decision. This proposition is most succinctly stated by Jones, in his work on Mortgages (7th ed. § 1620), as follows: " Where the mortgage covers two parcels of land, on one of which rests another incumbrance, recourse should first be had to the parcel not subject to the other mortgage." It is claimed here that by reason of that rule the ordinary rule of sale in inverse order of alienation is abrogated and the respondent was entitled to have the appellant's lot sold first. With this contention I do not agree for two reasons: *First.* To make such a rule applicable the fund or property involved must belong to the same person. (*Dorr* v. *Shaw,* 4 Johns. Ch. 17.) *Second.* The person invoking the aid of that rule must have no security other than the property upon which the prior mortgage is a lien.

The court at Special Term cited Thomas on Mortgages (3d ed. §§ 1014, 1017). Both of these sections, in my estimation, tend to support the claim of the appellant and not that of the respondent. In section 1017 it is stated: " As between mortgages of different dates, the rule of selling inversely in the order of their priority in point of time prevails, but as between a mortgage of an earlier date and a conveyance of a later, the mortgaged parcel must be sold first." In *Dorr* v. *Shaw* (*supra*) it was said: " If *A.* has a right to go upon two funds, and *B.* upon one, having both the same debtor, *and the funds are the property of the same person, A.* shall take payment from that fund to which he can resort exclusively, so that both may be paid." My attention has been called to no case holding that the rule as to selling in the inverse order of alienation must yield to the rule as to the resort to two funds under the circumstances shown here. The Special Term cited as supporting the contention that the rule requiring a sale in the inverse order of alienation should, in the interest of justice, be disregarded in this case, *Libby* v. *Tufts* (121 N. Y. 172) and *Bernhardt* v. *Lymburner* (85 id. 172). In *Libby* v. *Tufts* (*supra*) the rule as to inverse order of alienation was not involved in that action. The question there was, whether the holder of the mortgage, with notice of a conveyance, had subsequently released other premises

38

and thereby precluded himself from enforcing his mortgage against the parcel previously conveyed. In *Bernhardt* v. *Lymburner* (*supra*) the premises were all in the same ownership and the question arose between mortgagees. It was clearly shown that if the premises were sold as one parcel all the mortgagees could be paid and the court directed a sale in that way. The court stated: " The general rule is that where there are several successive grantees of different portions of mortgaged premises, the land on foreclosure is to be sold in the inverse order of alienation, and this secures the equitable rights of the parties as between themselves."

The respondent Schwartz is not entitled to the application of the rule as to the resort to two funds. That rule depends upon one of the claimants having a right to resort to only one fund. That, however, is not the position of the respondent Schwartz. The mortgage to him covered premises other than those involved in this action. It covered other premises in the immediate vicinity which, it is claimed, have been sold under a senior mortgage. It also covered other premises situate in the borough of Queens. The value of these premises is not shown and for aught that appears they are ample to satisfy the claim of the defendant Schwartz. At any rate, the fact that those premises are subject to the lien of his mortgage prevents the application of the rule he contends for. If Schwartz's mortgage covered only the premises involved in this foreclosure, still, he would not be equitably entitled to the application of this rule as against the grantee. If the grantee's premises are sold, her loss is complete; she cannot resort to any one to repay her. As to the mortgagee, the mortgage was only security for his loan and after the sale of the mortgaged premises the indebtedness remains and may be collected.

The orders should be reversed upon the facts and the law, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

KELLY, P. J., RICH and KAPPER, JJ., concur; LAZANSKY, J., dissents.

Orders reversed upon the facts and the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.